Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Mahru Madjidi, Esq. State Bar No. 297906
MMadjidi@Shegerianlaw.com
Aaron Gbewonyo, Esq., State Bar No. 315889
AGbewonyo@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
145 S. Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
TIFFANY BRODUS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY BRODUS, | Case No.: |
| Plaintiff, | **PLAINTIFF TIFFANY BRODUS'S COMPLAINT FOR DAMAGES FOR:** |
| vs. | **(1) DISCRIMINATION IN VIOLATION OF THE FEHA;** |
| MARCH INN AND AIR FORCE SERVICES AGENCY, USAF SERVICES COMBAT SUPPORT & COMMUNITY SERVICES, MARCH AIR RESERVE BASE, FREDRICK TILLMAN, JEFFREY JOSERAND, RODNEY LYKINS, MICHAEL VU, HONORABLE JOHN P. ROTH, SECRETARY OF THE AIRFORCE and DOES 1 through 100, inclusive, | **(2) HOSTILE WORK ENVIRONMENT HARASSMENT IN VIOLATION OF THE FEHA;** |
| | **(3) RETALIATION IN VIOLATION OF THE FEHA;** |
| Defendants. | **(4) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, OR RETALIATION IN VIOLATION OF THE FEHA;** |
| | **(5) WHISTLEBLOWER RETALIATION (LABOR CODE § 1102.5);** |
| | **(6) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.** |
| | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

SUMMARY ........................................................................................................ 1

PARTIES ........................................................................................................... 1

JURISDICTION AND VENUE ...................................................................... 3

FACTS COMMON TO ALL CAUSES OF ACTION ................................... 4

FIRST CAUSE OF ACTION .......................................................................... 12

    Discrimination on the Bases of Disability and/or Sex/Gender (Violation of Government Code § 12900, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive ........................................................................................ 12

SECOND CAUSE OF ACTION ..................................................................... 13

    Hostile Work Environment Harassment on the Bases Disability and/or Sex/Gender (Violation of Government Code § 12900, *et seq.*) Against All Defendants; and Does 1 to 100, Inclusive ......................................................... 13

THIRD CAUSE OF ACTION ......................................................................... 14

    Retaliation for Engaging in Protected Activity (Violation of Government Code § 12900, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive ........................................................................................................... 14

FOURTH CAUSE OF ACTION ..................................................................... 15

    Failure to Prevent Discrimination, Harassment, and Retaliation (Government Code § 12900, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive ........................................................................... 15

FIFTH CAUSE OF ACTION .......................................................................... 16

    Whistleblower Retaliation (Violation of Labor Code § 1102.5, *et seq.*) Against Entity Defendants and Does 1 to 100, Inclusive .............................. 16

SIXTH CAUSE OF ACTION .......................................................................... 17

    Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035) Against All Defendants; and Does 1 to 100, Inclusive ......... 17

PRAYER ........................................................................................................... 18

Plaintiff, Tiffany Brodus, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Tiffany Brodus ("Plaintiff" or "Brodus"), whose employment with defendant March Inn, Air Force Services Agency, USAF Services Combat Support & Community Services, and March Air Reserve Base (collectively, "Entity Defendants") was wrongfully terminated.  Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Brodus is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Entity Defendants are, and at all times mentioned in this Complaint were, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Entity Defendants' place of business, where the following causes of action took place, was and is in the Greater Los Angeles area, at 655 Main Street March, Moreno Valley, California 92518. Defendant Fredrick Tillman ("defendant" or "Tillman") is, and at all times mentioned in this Complaint was, a supervisor with Entity Defendants. Defendant Tillman is, and at all times mentioned in this Complaint was, a resident of  Los Angeles County, California. Defendant Jeffrey Joserand ("defendant" or "Joserand") is, and at all times mentioned in this Complaint was, a supervisor with Entity Defendants. Defendant Joserand is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California. Defendant Rodney Lykins ("defendant" or "Lykins") is, and at all

times mentioned in this Complaint was, a supervisor with Entity Defendants. Defendant Lykins is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California. Defendant Michael Vu ("defendant" or "Vu") is, and at all times mentioned in this Complaint was, a supervisor with Entity Defendants. Defendant Vu is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California. Defendant Honorable John P. Roth ("defendant" or "Honorable Roth") is, and at all times mentioned in this Complaint was, a supervisor with Entity Defendants. Defendant Honorable Roth is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California.

3. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

4. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality

and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

5. Entity Defendants both directly and indirectly employed plaintiff, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

6. In addition, defendant March compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## JURISDICTION AND VENUE

8. The actions at issue in this case occurred in the State of California, in the County of Los Angeles. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained . . . or in the county in which the aggrieved person would have worked or would have had access to the public accommodation but for the alleged unlawful practice, but if the defendant is not found within any of these counties, an action may be brought within the county of the defendant's residence or principal office . . .

(California Government Code § 12965(b).)

9. Here, the Plaintiff worked primarily in California in the Greater Los Angeles area. The location where Plaintiff worked was located in 655 Main Street March, Moreno

Valley, California 92518, California. Moreno Valley is in the Greater Los Angeles County, California. The majority of the unlawful actions on the part of the defendants occurred at said Moreno Valley location.

10.   "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Superior Court* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id*. at 487.)

11.   This Court has jurisdiction over this matter pursuant to 28 U.S Code §1345, which sets forth that this Court shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress. Additionally, this Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, and 28 U.S.C. § 1442(a)(1).

## FACTS COMMON TO ALL CAUSES OF ACTION

12.   *Plaintiff's hiring:* Tiffany Brodus ("Brodus"), a 39-year-old woman, was hired on August 1, 2016 to work for Entity Defendants as the Assistant Lodging Manager, and later, Interim Lodging Manager.

13.   *Plaintiff's protected status and activity:*

    a.   Plaintiff is a female;

    b.   Plaintiff suffered from a disability while employed with Defendants;

    c.   Plaintiff made complained about discrimination, harassment, retaliation, and illegal business practices and/or violations of government policies, practices, and procedures.

14.   *Defendants' adverse employment actions and behavior:*

a.   In or around late 2016, Plaintiff began training with Training Manager Fredrick Tillman ("Tillman"). On several occasions, Tillman called Plaintiff into his office to discuss her subordinates and their role in the five departments she oversaw. At the close of these meetings, Tillman regularly made sexual advances, innuendos, and comments to Plaintiff, including, "bring that ass into my office," "give me my medicine" (a sexual innuendo), "You look really good in those pants," and "give me a hug, bring it in." Each time, Plaintiff politely declined.

b.   Later in or around early 2016, Tillman began attempting to contact Plaintiff via social media and text message, including requesting that she go out with him for drinks after hours. Hoping to keep their relationship professional, Plaintiff always declined. However, Tillman regularly called Plaintiff after hours in further attempts to pursue a romantic relationship with her. Plaintiff wanted to report Tillman's conduct, but feared retaliation because she was aware that Tillman was close friends with her next level supervisor, Lodging Manager Michael Vu ("Vu"). As a result, Plaintiff felt that she had no one to turn to because of the male dominated atmosphere where everyone in her chain of command were all males who tolerated and often turned a blind eye to her treatment.

c.   In or around February 2017, Tillman intentionally grabbed Plaintiff's buttock. That was the last straw for Plaintiff.  Deeply shocked and offended by this unwelcomed contact, Plaintiff put her fears aside and immediately reported the occurrence to Vu. Two days later, Vu and Plaintiff met to discuss the matter, and Plaintiff requested that she no longer be required to work with Tillman. Vu advised that he "would take care of it," however, no actions were taken, and Plaintiff continued to be subjected to sexual advances by Tillman.

d.   In or around March 2017, after an end of day meeting with the housekeepers, Tillman followed Plaintiff to the reservation's office.  Thereafter, Tillman intentionally forced his body against Plaintiff's as she stood in the doorway. As Tillman's body made physical contact with Plaintiff's, he came face to face with her and began to smirk and

chuckle. Plaintiff immediately sent an email complaint to Vu, stating, "I feel that because of your friendship with [Tillman], he thinks he can get away with this." However, Vu bushed off Plaintiff's complaint, stating, "I think it's all in your head."

e.   After Vu failed to address Plaintiff's complaint, later that week, in March 2017, Plaintiff escalated her complaint to Commander Rico Cicero ("Cicero") by forwarding the email complaint she previously sent to Vu, adding, "I don't know if you've been briefed; I am copying this email to express my concerns, I am uncomfortable, and I would like to feel more safe moving forward. I feel lodging Manager Michael is going to try to protect his friend." Plaintiff hoped that Cicero was going to properly investigate her complaint and address the issues.

f.   A few days later in or around early April 2017, Cicero and Plaintiff met, and she shared the text messages she received from Tillman with him. Additionally, she explained to Cicero that Tillman had been contacting her after hours, following her after meetings, that he grabbed her buttock; and she requested that she no longer work with Tillman. However, Cicero curtly replied, "There is no other position we can move him or you to. We will make sure you guys don't have contact with each other." However, despite Cicero's representations, Tillman continued to make sexual advances toward Plaintiff. Plaintiff felt helpless and victimized by Tillman.

g.   In or around April 2017, Plaintiff escalated her complaint to Super Intendant William Kelly ("Kelly") in an email. Plaintiff subsequently met with Kelly and pled, "I don't want to work with him. He should be moved, or I should be moved." However, Kelly brushed her complaint aside, stating, "This is a touchy issue. Your best bet is to go to EEO and file a complaint." Plaintiff began to feel frustrated as each male superior she went to refused to help her.

h.   On May 30, 2017, Plaintiff filed a formal sexual harassment complaint with EEO, naming Vu and advising of Tillman's actions. However, no real investigation was ever conducted into Plaintiff's complaint, as Tillman was never interviewed.

i.   In or around late 2017, Vu was promoted, resulting in Plaintiff serving as

interim Lodging Manager. However, Plaintiff did not receive a pay increase commensurate with this position and was still getting paid at the rate of an assistant. Thereafter, Vu, on multiple occasions, advised Plaintiff, "This is only temporary, and I am going to pay you for your work." It was during this time that Vu began to regularly promise Plaintiff a pay raise while he regularly attempted to engage her romantically, using the promise of a promotion and/or raise to encourage her to reciprocate.

j.   After several months of not receiving the promised promotion, in or around early 2018, Plaintiff followed up with Vu about her promotion. Vu continued to represent to Plaintiff that she would receive a promotion and continuously advised her to stay the course. Vu continued to make unsolicited attempts at fostering a romantic relationship with Plaintiff, including, inviting her out for drinks after hours. Specifically, on one occasion, Vu advised Plaintiff that his fiancé was out of town and invited her to join him at his house alone for drinks. Plaintiff declined each invitation, yet, Vu relentlessly continued in his pursuit. Plaintiff was besides herself and disheartened by the defendant's culture of tolerating sexual harassment against women in the workplace.     Plaintiff was emotionally breaking down and was in disbelief that now Vu was also engaging in harassing conduct towards her. As a result of the sexual harassment she experienced and continued to experience, Vu began to suffer from panic attacks and began seeking therapy on base.

k.   In or around December 2018, Plaintiff complained to Vu about Guest Representative, Perry Pursell ("Pursell") having behavioral issues. Specifically, Plaintiff complained to Vu that Pursell exhibited aggressive behavior toward his colleagues and that he attempted to coerce his colleagues into making false accusations regarding a federal investigation. Rather than take action to address Plaintiff's complaint, Vu advised Plaintiff, "[Pursell] will do something else to hang himself." In response, Plaintiff complained, "Yes, he likely will, but at me and the staff's expense." Notably, Plaintiff advised Vu that Pursell's conduct was the same conduct that that led Pursell's former supervisor, Jacqueline Macgowan taking a medical leave. In response, Vu stated, "That's

her Karma," a statement that Plaintiff understood to be the result of Macgowan making a complaint of discrimination against Vu; a topic that Vu regularly complained about to Plaintiff.

l.   On December 4, 2018, Plaintiff sent an email to Vu, Human Resources Chief Jennifer Ruperto, and Legal Advisor Julie Beyer complaining about Pursell. However, still nothing was done to address Plaintiff's complaint about Pursell.

m.   For several months, Plaintiff continued to raise complaints to Vu about the aggressive and abusive conduct that Pursell's engaging in with herself and her direct reports, yet nothing was done to address these complaints.

n.   In around April 2019, Pursell began making threats to Plaintiff's colleagues that he knew where Plaintiff lived, what pizza company she used, and that he intended on using his long-range gun to kill her. As a result of Pursell's threat of physical harm, Plaintiff's stress and anxiety was exacerbated, resulting in her beginning to suffer from severe panic attacks.

o.   On April 29, 2019, Plaintiff requested and subsequently took a medical leave to address her anxiety and panic attacks. While on leave, Plaintiff filed a complaint with HR, legal, and the Base Commander Melissa Coburn ("Coburn"). When Plaintiff returned from her leave in or around May 2019, she met with legal to discuss her complaint.

p.   In response, on June 14, 2019, Human Resources representative Jennifer Roperto ("Roperto") executed a no-contact order and removed Vu as Plaintiff supervisor.

q.   Despite being removed from his position as Plaintiff's direct supervisor, Vu began to assign Plaintiff to less favorable job duties that were outside the scope of her position, such as contracting which were the duties of a Business Specialist. Moreover, Vu began to assign Plaintiff to past due assignments, and set short unattainable deadlines for Plaintiff that were not assigned to other employees who were also given the same assignments. When Plaintiff complained to Vu about being assigned a past due assignment, he disregarded her complaint, making it clear to Plaintiff that he was attempting to set her up to fail. Similarly, Plaintiff began to experience this same treatment

from Rodney Lykins ("Lykins"). It was during this time that Plaintiff began to hear chatter amongst her colleagues that individuals who report and turn their back on their team are viewed and treated as troublemakers. Accordingly, it became clear to Plaintiff that this was a label being applied to her in the context of these conversations.

r.   As a result of the continued treatment that Plaintiff experienced at the hands of Vu and Lykins, on January 29, 2020, Plaintiff filed a formal complaint of retaliation with the EO office. Notably, as is required by policy, this investigation was not conducted by a neutral party nor was Plaintiff ever provided with a Commander Directed Investigation Report (CDI) as is required by policy.

s.   In or around end of February 2020, after the onset of the COVID-19 pandemic, March received its first aircraft from China, which delayed the EO paperwork and investigation. Lykins  instructed Plaintiff to give out daily supplies of hygiene products to the individuals on the aircraft. Plaintiff complained that distributing supplies was not in the budget and against company policy. In response, Lykins snapped at Plaintiff, demanding that she distribute the items. Plaintiff complained to the Chief of Airforce Services, Lieutenant Colonel Melanie Torossian ("Torossian"). However, Torossian began to chastise Plaintiff, accusing her of violating policy. Despite knowledge of this clear violation, Lykins insisted that Plaintiff give out the supplies, which Plaintiff proceeded to do. However, despite instruction from Torossian, which Lykins was aware of, Lykins demanded that Plaintiff distribute the hygiene supplies.

t.   On March 24, 2020, Plaintiff sent a letter to Lykins advising him that she suffered from an autoimmune-issues and was working with her doctor to address her condition. Plaintiff proceeded to request that Lykins afford her the opportunity to work from home. Notably, March was releasing a number of its employees to allow them to work remotely, particularly anyone over the age of 65, who had an existing condition, or could have worked from home. However, Lykins refused, despite Plaintiff's job duties being of the nature that did not require her to be physically on site to perform.

u.   On March 26, 2020, Plaintiff received a cease and desist letter from Lykins

to cease any contact with my staff or her superiors. The letter accused Plaintiff of being insubordinate, specifically stating that she requested to dismiss staff during COVID-19 pandemic, provided false and misleading information to my staff, and failed to comply with her superiors' orders. Plaintiff was shocked by these false allegations.

15.   *Defendants' termination of plaintiff's employment:* On April 3, 2020, Plaintiff sent a letter disputing the allegations against her. However, without any further explanation or discussion, Plaintiff received a notice of decision dated April 30, 2020, stating that she had been terminated. Notably, such a termination requires certain process to occur, including the investigation of a neutral third party and a CDI to be provided to any party involved, however, that did not happen in Plaintiff's termination.

16.   *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

17.   *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

18.   *Punitive damages:*   Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a.   *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of her age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard

of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of her age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive her of legal rights.

19. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

20. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted her administrative remedies by filing a timely formal complaint with the Equal Employment Office ("EEO") within 45 days of the actionable conduct and/or events, and waited 180 days for the EEO to investigate these claim, prior to filing this complaint pursuant to 29 C.F.R. § 1614.105(a).

///

///

///

///

///

# FIRST CAUSE OF ACTION

## Discrimination on the Bases of Disability and/or

## Sex/Gender

## (Violation of Government Code § 12900, *et seq.*)

### Against Entity Defendants; and Does 1 to 100, Inclusive

21.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

22.   At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on Entity Defendants.  This statute requires Entity Defendants to refrain from discriminating against any employee because, but not limited to he or she is more than 40 years old or because of the employee's gender, sex, and/or actual, perceived, and/or history of having a disability.

23.   Plaintiff's sex, gender, and/or actual, perceived, and/or history of disability, and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were substantial motivating reasons in Entity Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse employment actions against Plaintiff.

24.   As a proximate result of Entity Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

25.   As a proximate result of Entity Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

26.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

## SECOND CAUSE OF ACTION

### Hostile Work Environment Harassment on the Bases

### Disability and/or Sex/Gender

### (Violation of Government Code § 12900, *et seq.*)

### Against All Defendants; and Does 1 to 100, Inclusive

27.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

28.   At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants.  This statute requires defendants to refrain from harassing any employee because he or she is more than 40 years old or because of the employee's gender, sex, and/or actual, perceived, and or history of a disability.

29.   Plaintiff was subjected to harassing conduct through a hostile work environment, in whole or in part on the bases of Plaintiff's sex, gender, and/or actual, perceived, and/or history of having a disability, and/or other protected characteristics, in violation of Government Code sections 12940(j) and 12923.

30.   Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with Plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

31.   As a proximate result of defendants' willful, knowing, and intentional harassment of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

32.   As a proximate result of defendants' willful, knowing, and intentional harassment of Plaintiff, Plaintiff as suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

33.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable

attorneys' fees and costs (including expert costs) in an amount according to proof.

34.   Defendants Tillman, Joserand, and Lykins harassment was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against defendants Tillman, Joserand, and Lykins.

### THIRD CAUSE OF ACTION
### Retaliation for Engaging in Protected Activity
### (Violation of Government Code § 12900, *et seq.*)
### Against Entity Defendants; and Does 1 to 100, Inclusive

35.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

36.   At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on Entity Defendants. This statute requires Entity Defendants to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing Entity Defedants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

37.   Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing Entity Defendants' failure to provide such rights, including the right to be free of discrimination, harassment, or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in Entity Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse employment actions against Plaintiff.

38.   As a proximate result of Entity Defendants willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

39.   As a proximate result of Entity Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

40.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FOURTH CAUSE OF ACTION
### Failure to Prevent Discrimination,
### Harassment, and Retaliation
### (Government Code § 12900, *et seq.*)
### Against Entity Defendants; and Does 1 to 100, Inclusive

41.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

42.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on Entity defendants.  This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

43.   During the course of Plaintiff's employment, Entity Defendants failed to prevent their employees from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of plaintiff's disability, requesting leave, and/or or because plaintiff had engaged in protected activity.

44.   Plaintiff believes that he was subjected to discrimination, harassment and retaliation because of his disability, requesting leave, and/or protected activity.

45.   As a proximate result of Entity Defendants' willful, knowing, and intentional misconduct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

46.   As a proximate result of Entity Defendants' willful, knowing, and intentional misconduct, plaintiffs have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

47.   Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiffs are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

48.   Entity Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling plaintiffs to punitive damages against Entity defendants.

## FIFTH CAUSE OF ACTION
### Whistleblower Retaliation
### (Violation of Labor Code § 1102.5, *et seq.*)
### Against Entity Defendants and Does 1 to 100, Inclusive

49.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

50.   At all relevant times, Labor Code section 1102.5 was in effect and was binding on Entity Defendants. This statute prohibits Entity Defendants from retaliating against any employee, including Plaintiff, for actually raising complaints of actual or potential illegality, for providing information of such actual or potential illegality, because the employee is believed to have engaged in such conduct, or because the employee may engage in such conduct. The statute also further prohibits Entity Defendants from retaliating against any employee, including plaintiff, where the employee refused to participate in activity that would result in a violation of the law.

51.   Plaintiff raised complaints of actual and/or potential illegality, including but not limited to complaints about violations of the FEHA, California Constitution, and Government Code Section 12900 *et seq.*, and other laws, regulations, statutes while she worked for Entity Defendnats, and Entity Defendants retaliated against her by taking

adverse employment actions, including employment termination, against her.

52.   As a proximate result of Entity Defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

53.   As a result of Entity Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

54.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Labor Code section 1102.5, plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

**SIXTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(<u>Hughes v. Pair</u> (2009) 46 Cal.4th 1035)**

**Against All Defendants; and Does 1 to 100, Inclusive**

55.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

56.   Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted extreme and outrageous misconduct and caused Plaintiff severe emotional distress. Defendants were aware that treating plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, would devastate Plaintiff and cause her extreme hardship.

57.   As a proximate result of defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

58.   As a proximate result of defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and

PLAINTIFF'S COMPLAINT FOR DAMAGES

physical pain and anguish, all to her damage in a sum according to proof.

59.   Defendants' Tillman, Joserand, and Lykins harassment and other extreme and outrageous conduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants' Tillman, Joserand, and Lykins.

## PRAYER

WHEREFORE, plaintiff, Tiffany Brodus, prays for judgment against defendants as follows:

1.  For general and special damages according to proof;

2.  For exemplary damages, according to proof;

3.  For pre-judgment and post-judgment interest on all damages awarded;

4.  For reasonable attorneys' fees;

5.  For costs of suit incurred;

6.  For declaratory relief:

7.  For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, plaintiff, Tiffany Brodus, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: April 9, 2021                    SHEGERIAN & ASSOCIATES, INC.

By: _____
Mahru Madjidi, Esq.

Attorneys for Plaintiff,
TIFFANY BRODUS