Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Mahru Madjidi, Esq. State Bar No. 297906
MMadjidi@Shegerianlaw.com
Aaron Gbewonyo, Esq., State Bar No. 315889
AGbewonyo@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
145 S. Spring Street, Suite 400
Los Angeles, California 90012
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
TIFFANY BRODUS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| TIFFANY BRODUS, | Case No.: 2:21-cv-03112-JAK-JPR |
|---|---|
| Plaintiff, | **PLAINTIFF TIFFANY BRODUS'S THIRDAMENDED COMPLAINT FOR DAMAGES FOR:** |
| vs. | |
| SECRETARY FRANK KENDALL, | **(1) DISCRIMINATION IN VIOLATION OF TITLE VII AND ADA;** |
| Defendants. | **(2) HOSTILE WORK ENVIRONMENT HARASSMENT IN VIOLATION OF TITLE VII AND ADA;** |
| | **(3) RETALIATION IN VIOLATION OF TITLE VII AND ADA;** |
| | **(4) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, OR RETALIATION IN VIOLATION OF TITLE VII AND ADA;** |
| | **(5) WHISTLEBLOWER RETALIATION** |
| | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

SUMMARY ................................................................................................. 1

PARTIES .................................................................................................... 1

JURISDICTION AND VENUE ................................................................. 3

FACTS COMMON TO ALL CAUSES OF ACTION ............................... 4

FIRST CAUSE OF ACTION ................................................................... 11

    Discrimination on the Bases of Disability and/or Sex/Gender (Violation of the ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a).)) Against Defendant .................................. 11

SECOND CAUSE OF ACTION .............................................................. 12

    Hostile Work Environment Harassment on the Bases Disability and/or Sex/Gender (Violation of VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e), the ADA) Against Defendant .............................................. 12

THIRD CAUSE OF ACTION .................................................................. 13

    Retaliation for Engaging in Protected Activity  (Violation of ADA. Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et. seq.,1604.2(a)(1)(i), and 1604.11(a).) Against Defendant ............................................................... 13

FOURTH CAUSE OF ACTION ............................................................... 15

    Failure to Prevent Discrimination, Harassment, and Retaliation (Title VII and ADA) Against Defendant ...................................................... 15

FIFTH CAUSE OF ACTION ................................................................... 16

    Whistleblower Retaliation Against Defendant ........................................ 16

PRAYER .................................................................................................. 17

Plaintiff, Tiffany Brodus, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Tiffany Brodus ("Plaintiff" or "Brodus"), whose employment was wrongfully terminated. Plaintiffs bring this action against Secretary Frank Kendall in his official capacity, pursuant to Fed. R. Civ. P. 25(d), Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a) for economic, non-economic, compensatory, and pre-judgment interest, and costs and reasonable attorneys' fees.

## PARTIES

1. *Plaintiff:* Plaintiff Brodus is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Secretary Frank Kendall ("Defendant")_is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendant's place of business, where the following causes of action took place, was and is in the Greater Los Angeles area, at 655 Main Street March, Moreno Valley, California 92518.

3. Pursuant to Fed. R. Civ. P. 25(d), Secretary Frank Kendall, shall be automatically substituted as the named party.

4. Pursuant to Fed. R. Civ. P. 25(d), Secretary Frank Kendall   is the proper defendant from whom Plaintiff  brings claims for money damages arising from or out of a negligent or wrongful act and/or omission of any federal employee committed within the course and scope of their employment pursuant to 28 U.S.C. § 2679(b)(1). This case is brought against the Secretary Frank Kendall, pursuant to Fed. R. Civ. P. 25(d). Liability of Secretary Kendall is predicated specifically on 28 U.S.C. §§ 1346(b)(1) and 2674

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES

because personal injuries, wrongful death, and resulting damages that form the basis of this complaint, were proximately caused by the negligence, wrongful acts and/or omissions of Secretary Frank Kendall, pursuant to Fed. R. Civ. P. 25(d). This employee was acting within the course and scope of his office or employment, under circumstances where Secretary Frank Kendall in his official capacity, pursuant to Fed. R. Civ. P. 25(d), may be liable as if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of California.

5. *Relationship of defendants:* Secretary Frank Kendall in his official capacity, pursuant to Fed. R. Civ. P. 25(d) compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under 42 U.S.C. § 5891, Title VII of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a). Secretary Frank Kendall in his official capacity, pursuant to Fed. R. Civ. P. 25(d) was responsible for the events and damages alleged herein, including on the following bases: (a) Secretary Frank Kendall committed the acts alleged; (b) at all relevant times, the actions alleged herein were committed by the agent or employee, and/or acted under the control or supervision, of Secretary Frank Kendall and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among Secretary Frank Kendall and persons who engaged in the activity alleged by plaintiff, such that any individuality and separateness between or among those Secretary Frank Kendall and these individuals  has ceased, and Secretary Frank Kendall is the alter ego of these individuals.  Secretary Frank Kendall exercised domination and control over the individuals who engaged in the unlawful conduct herein alleged to the extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of Secretary Frank Kendall and these individuals would permit abuse of the corporate privilege and would sanction fraud and promote injustice.  All actions of

engaged in were taken by employees, supervisors, executives, officers, and directors during employment on behalf of Secretary Frank Kendall, and were engaged in, authorized, ratified, and approved of by Secretary Frank Kendall.

6.   Secretary Frank Kendall, pursuant to Fed. R. Civ. P. 25(d), both directly and indirectly employed plaintiff, as defined in the as defined in 42 U.S.C. § 5891, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)

7.   In addition, Secretary Frank Kendall, pursuant to Fed. R. Civ. P. 25(d), compelled, coerced, aided, and abetted the discrimination, which is prohibited under ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)

## JURISDICTION AND VENUE

8.   On or around May 30, 2017, Plaintiff exhausted her administrative remedies by timely filing a formal EEO complaint of sexual harassment pursuant to 29 CFR § 1614.106. Again, in or around April 2019, Plaintiff filed a formal EEO complaint pursuant to 29 CFR § 1614.106. On or around January 29, 2020, Plaintiff timely filed an amendment to her complaint in accordance with 29 CFR § 1614(e) of discrimination and retaliation. On or around March 4, 2020, Plaintiff timely filed a formal complaint of sexual harassment, hostile work environment harassment, discrimination, and retaliation pursuant to 29 CFR § 1614.106.  On July 23, 2020, Plaintiff timely filed an amendment to her complaint in accordance with 29 CFR § 1614(e) of discrimination and retaliation. Subsequently, on or around September 14, 2020, Defendant informed Plaintiff that her claims of discrimination, harassment, retaliation, and sexual harassment were going to be investigated. On September 14, 2020, Defendant contacted Plaintiff and requested a 90-day extension to investigate Plaintiff's claims. On or around October 22, 2020, Plaintiff exhausted her administrative remedies by timely filing an EEO claim with Defendants. On February 23, 2021, Plaintiff was contacted by the Defendant and informed her that they

were unable to complete the investigation within the required timeframe pursuant to 29 CFR § 1614.108(f), and notified Plaintiff that if she does not want to wait for the investigation to be completed, she may file a civil action in the appropriate United States District Court in accordance with 29 CFR § 1614.407.

9. This action arises under Civil Rights Act of 1964, as amended, 42 U.S.C § 2000(e) et. seq. and alleges claims of discrimination based on sex (female) and reprisal (prior EEO activity), among others.

10. This Court has jurisdiction over all causes of action asserted against the federal government pursuant to 28 U.S.C. § 1346(b)(1). Supplemental jurisdiction rests upon 28 U.S.C. §1367.

11. Defendant is a governmental entity. Plaintiff resides in the Central District of California and the events described in the complaints arose in this district.

12. Venue is proper in this district under 28 U.S.C §1402 and in the that Defendant transacts business here and in that the conduct complained of occurred here.

13. Here, the Plaintiff worked primarily in California in the Greater Los Angeles area. The location where Plaintiff worked was located in 655 Main Street March, Moreno Valley, California 92518, California. Moreno Valley is in the Greater Los Angeles County, California. The majority of the unlawful actions on the part of the defendants occurred at said Moreno Valley location.

14. This Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, and 28 U.S.C. § 1442(a)(1).

## FACTS COMMON TO ALL CAUSES OF ACTION

15. *Plaintiff's hiring:* Tiffany Brodus ("Brodus"), a 39-year-old woman, was hired on August 1, 2016 to work for Secretary Frank Kendall, pursuant to Fed. R. Civ. P. 25(d) as the Assistant Lodging Manager, and later, Interim Lodging Manager.

16. *Plaintiff's protected status and activity:*

a.   Plaintiff is a female;

b.   Plaintiff suffered from a disability while employed with Defendant;

c.   Plaintiff made complained about discrimination, harassment, retaliation, and illegal business practices and/or violations of government policies, practices, and procedures.

17.   *Defendant's adverse employment actions and behavior:*

a.   In or around late 2016, Plaintiff began training with Training Manager Fredrick Tillman ("Tillman"). On several occasions, Tillman called Plaintiff into his office to discuss her subordinates and their role in the five departments she oversaw. At the close of these meetings, Tillman regularly made sexual advances, innuendos, and comments to Plaintiff, including, "bring that ass into my office," "give me my medicine" (a sexual innuendo), "You look really good in those pants," and "give me a hug, bring it in." Each time, Plaintiff politely declined.

b.   Later in or around early 2016, Tillman began attempting to contact Plaintiff via social media and text message, including requesting that she go out with him for drinks after hours. Hoping to keep their relationship professional, Plaintiff always declined. However, Tillman regularly called Plaintiff after hours in further attempts to pursue a romantic relationship with her. Plaintiff wanted to report Tillman's conduct, but feared retaliation because she was aware that Tillman was close friends with her next level supervisor, Lodging Manager Michael Vu ("Vu"). As a result, Plaintiff felt that she had no one to turn to because of the male dominated atmosphere where everyone in her chain of command were all males who tolerated and often turned a blind eye to her treatment.

c.   In or around February 2017, Tillman intentionally grabbed Plaintiff's buttock. That was the last straw for Plaintiff.  Deeply shocked and offended by this unwelcomed contact, Plaintiff put her fears aside and immediately reported the occurrence to Vu. Two days later, Vu and Plaintiff met to discuss the matter, and Plaintiff requested that she no longer be required to work with Tillman. Vu advised that he "would take care of it," however, no actions were taken, and Plaintiff continued to be subjected to sexual

advances by Tillman.

d.   In or around March 2017, after an end of day meeting with the housekeepers, Tillman followed Plaintiff to the reservation's office. Thereafter, Tillman intentionally forced his body against Plaintiff's as she stood in the doorway. As Tillman's body made physical contact with Plaintiff's, he came face to face with her and began to smirk and chuckle. Plaintiff immediately sent an email complaint to Vu, stating, "I feel that because of your friendship with [Tillman], he thinks he can get away with this." However, Vu bushed off Plaintiff's complaint, stating, "I think it's all in your head."

e.   After Vu failed to address Plaintiff's complaint, later that week, in March 2017, Plaintiff escalated her complaint to Commander Rico Cicero ("Cicero") by forwarding the email complaint she previously sent to Vu, adding, "I don't know if you've been briefed; I am copying this email to express my concerns, I am uncomfortable, and I would like to feel more safe moving forward. I feel lodging Manager Michael is going to try to protect his friend." Plaintiff hoped that Cicero was going to properly investigate her complaint and address the issues.

f.   A few days later in or around early April 2017, Cicero and Plaintiff met, and she shared the text messages she received from Tillman with him. Additionally, she explained to Cicero that Tillman had been contacting her after hours, following her after meetings, that he grabbed her buttock; and she requested that she no longer work with Tillman. However, Cicero curtly replied, "There is no other position we can move him or you to. We will make sure you guys don't have contact with each other." However, despite Cicero's representations, Tillman continued to make sexual advances toward Plaintiff. Plaintiff felt helpless and victimized by Tillman.

g.   In or around April 2017, Plaintiff escalated her complaint to Super Intendant William Kelly ("Kelly") in an email. Plaintiff subsequently met with Kelly and pled, "I don't want to work with him. He should be moved, or I should be moved." However, Kelly brushed her complaint aside, stating, "This is a touchy issue. Your best bet is to go to EEO and file a complaint." Plaintiff began to feel frustrated as each male superior she went to

refused to help her.

h.   On May 30, 2017, Plaintiff filed a formal sexual harassment complaint with EEO, naming Vu and advising of Tillman's actions. However, no real investigation was ever conducted into Plaintiff's complaint, as Tillman was never interviewed.

i.   In or around late 2017, Vu was promoted, resulting in Plaintiff serving as interim Lodging Manager. However, Plaintiff did not receive a pay increase commensurate with this position and was still getting paid at the rate of an assistant. Thereafter, Vu, on multiple occasions, advised Plaintiff, "This is only temporary, and I am going to pay you for your work." It was during this time that Vu began to regularly promise Plaintiff a pay raise while he regularly attempted to engage her romantically, using the promise of a promotion and/or raise to encourage her to reciprocate.

j.   After several months of not receiving the promised promotion, in or around early 2018, Plaintiff followed up with Vu about her promotion. Vu continued to represent to Plaintiff that she would receive a promotion and continuously advised her to stay the course. Vu continued to make unsolicited attempts at fostering a romantic relationship with Plaintiff, including, inviting her out for drinks after hours. Specifically, on one occasion, Vu advised Plaintiff that his fiancé was out of town and invited her to join him at his house alone for drinks. Plaintiff declined each invitation, yet, Vu relentlessly continued in his pursuit. Plaintiff was besides herself and disheartened by the defendant's culture of tolerating sexual harassment against women in the workplace.    Plaintiff was emotionally breaking down and was in disbelief that now Vu was also engaging in harassing conduct towards her. As a result of the sexual harassment she experienced and continued to experience, Vu began to suffer from panic attacks and began seeking therapy on base.

k.   In or around December 2018, Plaintiff complained to Vu about Guest Representative, Perry Pursell ("Pursell") having behavioral issues. Specifically, Plaintiff complained to Vu that Pursell exhibited aggressive behavior toward his colleagues and that he attempted to coerce his colleagues into making false accusations regarding a federal

investigation. Rather than take action to address Plaintiff's complaint, Vu advised Plaintiff, "[Pursell] will do something else to hang himself." In response, Plaintiff complained, "Yes, he likely will, but at me and the staff's expense." Notably, Plaintiff advised Vu that Pursell's conduct was the same conduct that that led Pursell's former supervisor, Jacqueline Macgowan taking a medical leave. In response, Vu stated, "That's her Karma," a statement that Plaintiff understood to be the result of Macgowan making a complaint of discrimination against Vu; a topic that Vu regularly complained about to Plaintiff.

l.   On December 4, 2018, Plaintiff sent an email to Vu, Human Resources Chief Jennifer Ruperto, and Legal Advisor Julie Beyer complaining about Pursell. However, still nothing was done to address Plaintiff's complaint about Pursell.

m.   For several months, Plaintiff continued to raise complaints to Vu about the aggressive and abusive conduct that Pursell's engaging in with herself and her direct reports, yet nothing was done to address these complaints.

n.   In around April 2019, Pursell began making threats to Plaintiff's colleagues that he knew where Plaintiff lived, what pizza company she used, and that he intended on using his long-range gun to kill her. As a result of Pursell's threat of physical harm, Plaintiff's stress and anxiety was exacerbated, resulting in her beginning to suffer from severe panic attacks.

o.   On April 29, 2019, Plaintiff requested and subsequently took a medical leave to address her anxiety and panic attacks.  While on leave, Plaintiff filed a complaint with HR, legal, and the Base Commander Melissa Coburn ("Coburn"). When Plaintiff returned from her leave in or around May 2019, she met with legal to discuss her complaint.

p.   In response, on June 14, 2019, Human Resources representative Jennifer Roperto ("Roperto") executed a no-contact order and removed Vu as Plaintiff supervisor.

q.   Despite being removed from his position as Plaintiff's direct supervisor, Vu began to assign Plaintiff to less favorable job duties that were outside the scope of her position, such as contracting which were the duties of a Business Specialist. Moreover,

Vu began to assign Plaintiff to past due assignments, and set short unattainable deadlines for Plaintiff that were not assigned to other employees who were also given the same assignments. When Plaintiff complained to Vu about being assigned a past due assignment, he disregarded her complaint, making it clear to Plaintiff that he was attempting to set her up to fail. Similarly, Plaintiff began to experience this same treatment from Rodney Lykins ("Lykins"). It was during this time that Plaintiff began to hear chatter amongst her colleagues that individuals who report and turn their back on their team are viewed and treated as troublemakers. Accordingly, it became clear to Plaintiff that this was a label being applied to her in the context of these conversations.

r.   As a result of the continued treatment that Plaintiff experienced at the hands of Vu and Lykins, on January 29, 2020, Plaintiff filed a formal complaint of retaliation with the EO office. Notably, as is required by policy, this investigation was not conducted by a neutral party nor was Plaintiff ever provided with a Commander Directed Investigation Report (CDI) as is required by policy.

s.   In or around end of February 2020, after the onset of the COVID-19 pandemic, Defendant received its first aircraft from China, which delayed the EO paperwork and investigation. Lykins  instructed Plaintiff to give out daily supplies of hygiene products to the individuals on the aircraft. Plaintiff complained that distributing supplies was not in the budget and against company policy. In response, Lykins snapped at Plaintiff, demanding that she distribute the items. Plaintiff complained to the Chief of Airforce Services, Lieutenant Colonel Melanie Torossian ("Torossian"). However, Torossian began to chastise Plaintiff, accusing her of violating policy. Despite knowledge of this clear violation, Lykins insisted that Plaintiff give out the supplies, which Plaintiff proceeded to do. However, despite instruction from Torossian, which Lykins was aware of, Lykins demanded that Plaintiff distribute the hygiene supplies.

t.   On March 24, 2020, Plaintiff sent a letter to Lykins advising him that she suffered from an autoimmune-issues and was working with her doctor to address her condition. Plaintiff proceeded to request that Lykins afford her the opportunity to work

from home. Notably, Defendant was releasing a number of its employees to allow them to work remotely, particularly anyone over the age of 65, who had an existing condition, or could have worked from home. However, Lykins refused, despite Plaintiff's job duties being of the nature that did not require her to be physically on site to perform.

u.   On March 26, 2020, Plaintiff received a cease and desist letter from Lykins to cease any contact with my staff or her superiors. The letter accused Plaintiff of being insubordinate, specifically stating that she requested to dismiss staff during COVID-19 pandemic, provided false and misleading information to my staff, and failed to comply with her superiors' orders.  Plaintiff was shocked by these false allegations.

18.   *Defendants' termination of plaintiff's employment:* On April 3, 2020, Plaintiff sent a letter disputing the allegations against her. However, without any further explanation or discussion, Plaintiff received a notice of decision dated April 30, 2020, stating that she had been terminated. Notably, such a termination requires certain process to occur, including the investigation of a neutral third party and a CDI to be provided to any party involved, however, that did not happen in Plaintiff's termination.

19.   *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

20.   *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

21.   *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

22.   *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted her administrative remedies by filing a timely formal complaint with the Equal Employment Office ("EEO") within 45 days of the actionable conduct and/or events, and

waited 180 days for the EEO to investigate these claim, prior to filing this complaint pursuant to 29 C.F.R. § 1614.105(a).

## FIRST CAUSE OF ACTION
### Discrimination on the Bases of Disability and/or Sex/Gender
### (Violation of the ADA, Title VII of the Civil Rights Act of
### 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and
### 1604.11(a).))
### Against Defendant

23.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

24.   At all times herein mentioned,   ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a) were in full force and effect and was binding on Defendant.   This statute requires Defendant to refrain from discriminating against any employee because, but not limited to his or her gender, sex, and/or disability (actual, perceived, and/or history of having a disability).

25.   Plaintiff's sex, gender, and/or actual, perceived, and/or history of disability, and/or other characteristics protected by the ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a) ., were substantial motivating reasons in Defendant's decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse employment actions against Plaintiff.

26.  As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

27.  As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum

according to proof.

28.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Title VII of the Civil Rights Act of 1964, and the ADA, plaintiffs are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**SECOND CAUSE OF ACTION**

**<u>Hostile Work Environment Harassment on the Bases</u>**

**<u>Disability and/or Sex/Gender</u>**

**<u>(Violation of VII of the Civil Rights Act of 1964, 42 U.S.C. §</u>**

**<u>2000 (e), the ADA)</u>**

**Against Defendant**

29.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

30.   At all times herein mentioned, ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a). were in full force and effect and was binding on defendants.  This statute requires defendants to refrain from harassing any employee because of his or her gender, sex, and/or disability (actual, perceived, and or history of  a disability).

31.   Plaintiff was subjected to harassing conduct through a hostile work environment, in whole or in part on the bases of Plaintiff's sex, gender, and/or actual, perceived, and/or history of having a disability, and/or other protected characteristics, in ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)

32.   ..

33.   The Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, religion, sex or national origin. These provisions of the civil rights act prohibit discrimination on the basis of sex, in hiring, promoting, or firing. Further, §1604.11(a) prohibits harassment on the basis of sex in violation of section 703 of title VII, which prohibits unwelcome sexual advances, requests for sexual favors, and other verbal or

-12-

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES

physical conduct of a sexual nature, where submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, or submission or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

34.   Defendant's conduct, as alleged, violated the aforementioned laws. Defendant committed unlawful employment practices, including harassing plaintiffs and/or creating a hostile work environment, in whole or in part on the bases of Plaintiff's sex and/or gender.

35.   As a proximate result of defendant's willful, knowing, and intentional harassment of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

36.   As a proximate result of defendant's willful, knowing, and intentional harassment of Plaintiff, Plaintiff as suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

37.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Title VII of the Civil Rights Act of 1964, and the ADA, plaintiffs are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

### THIRD CAUSE OF ACTION
### Retaliation for Engaging in Protected Activity
### (Violation of ADA. Civil Rights Act of 1964, 42 U.S.C. §§
### 2000(e) et. seq.,1604.2(a)(1)(i), and 1604.11(a).)
### Against Defendant

38.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

39.   At all times herein mentioned, Title VII, Civil Rights Act of 1964, as amended,

42 U.S.C § 2000(e) et. seq. were in full force and effect and was binding on defendants. were in full force and effect and was binding on Defendant. This statute requires Defendant to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the Civil Rights Act of 1964, Title VII, including for seeking to exercise rights guaranteed under Civil Rights Act of 1964, Title VII, and the assisting and/or participating in an investigation, opposing Defendant's failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of the ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)

40.   Title VII provides that no person employed by a company or entity covered by Title VII, or applying to work for that company, can be denied employment or treated differently with regard to any workplace decision on the basis of perceived racial, religious, national, sexual or religious characteristics. Title VII also prohibits harassment based on any person's membership in a protected class, or retaliating against any person for participating in an EEOC investigation regarding a claim of discrimination or harassment.

41.   Plaintiff's seeking to exercise rights guaranteed under ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)  and/or opposing Defendant's failure to provide such rights, including the right to be free of discrimination, harassment, or retaliation, in violation of ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a), were substantial motivating reasons in Defendant's decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse employment actions against Plaintiff.

42.   As a proximate result of Defendant's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

43.   As a proximate result of Defendant's' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

44.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Civil Rights Act of 1964, ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)

45.   plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

### FOURTH CAUSE OF ACTION
### <u>Failure to Prevent Discrimination,</u>
### <u>Harassment, and Retaliation</u>
### <u>(Title VII and ADA)</u>
### Against Defendant

46.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

47.   At all times herein mentioned, Title VII and ADA, were in full force and effect and was binding on Entity defendants.  This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

48.   During the course of Plaintiff's employment, Defendant failed to prevent their employees from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of plaintiff's disability (actual, history of, and/or perceived), requesting leave, and/or or because plaintiff had engaged in protected activity.

49.   Plaintiff believes that he was subjected to discrimination, harassment and retaliation because of his disability, requesting leave, and/or protected activity.

50.   As a proximate result of Defendant's willful, knowing, and intentional miscon-

duct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

51.   As a proximate result of Defendant's willful, knowing, and intentional misconduct, plaintiffs have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

52.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Civil Rights Act of 1964, ADA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a)

53.   plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FIFTH CAUSE OF ACTION
### <u>Whistleblower Retaliation</u>
### Against Defendant

54.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

55.   Plaintiff raised complaints of actual and/or potential illegality, including but not limited to complaints about violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et. seq.*,1604.2(a)(1)(i), and 1604.11(a) , and other laws, regulations, statutes while she worked for Defendnat, and Defendant retaliated against her by taking adverse employment actions, including employment termination, against her.

56.   As a proximate result of Defendant's willful, knowing, and retaliation against Plaintiff for engaging in a protected activity, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

57.   As a result of Defendant's adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

58.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

Pursuant to Labor Code section 1102.5, plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## PRAYER

WHEREFORE, plaintiff, Tiffany Brodus, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For declaratory relief:
7. For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, plaintiff, Tiffany Brodus, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: November 23, 2021          SHEGERIAN & ASSOCIATES, INC.

By: _____
Mahru Madjidi, Esq.

Attorneys for Plaintiff,
TIFFANY BRODUS

PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES